STATE OF CONNECTICUT *v.* CURTIS SMALL
(2271)

DANNEHY, C.P.J., TESTO and HULL, Js.

Argued December 6, 1983—decision released April 24, 1984

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Robert J. Devlin,* assistant state's attorney, and *Claire Geber,* law student intern, for the appellee (state).

TESTO, J. After a jury trial, the defendant was convicted of robbery in the first degree and assault in the second degree in violation of General Statutes §§ 53a-134 (a) (3) and 53a-60 (a) (2) respectively. On appeal,[1] the defendant claims that the trial court erred (1) in denying the motion to suppress the identification; and (2) in exhibiting a photograph of the defendant as a juvenile in violation of General Statutes §§ 46b-124 (a) and 46b-146 which protect the confidentiality of juvenile records.

At approximately 8 a.m. on March 28, 1980, the victim, while walking through the parking lot of her place of work, was robbed and beaten by a young male. A witness, who knew the victim and worked at the same place, viewed the incident from a short distance away. After the robbery and assault, the perpetrator ran around the corner of a building, passing the witness at a distance of about two feet. The witness described the assailant to the police as having a "dark complexion, about five-two; approximately fifteen or fourteen years old, could have been older; low cut afro; and had

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

some kind of scar . . . a male . . . black, and he had on a . . . vinyl-type jacket, leather-type jacket . . . beige-like."[2]

On April 2, 1980, five days after the incident, the witness was shown eight photographs at the police station. After looking at them for awhile, she identified the defendant as the person who committed the assault and robbery. The victim was also shown the photographic array. She was unable to make any identification.

As a result of the witness' identification, a warrant was issued for the arrest of the defendant. Prior to trial the defendant moved to suppress any out-of-court and in-court identification of him on the basis that the out-of-court identification from the photographic array was so impermissibly suggestive that it violated his due process rights. The motion was denied after the trial court found that, although the photographs shown to the witness could have been more similar, the procedure used was not "substantially suggestive."

During the trial, but out of the presence of the jury, defense counsel objected[3] to the admissibility of the photograph of the defendant as a juvenile. The court ruled that the photograph was admissible. The witness then made an in-court identification of the defendant. The jury returned a verdict of guilty of robbery in the first degree and assault in the second degree. The defendant was sentenced to an indefinite term not to exceed five years on each count, to be served concurrently.

The first claim pursued by the defendant on appeal is that the trial court erred in denying the motion to suppress testimony concerning the pretrial photo-

---

[2] At the time of the incident, there were two youths with the witness who informed her that the assailant's first name is Pete or Peter.

[3] During the pretrial suppression hearing, defense counsel objected to the exhibit which included the defendant's photograph as a juvenile in the photographic array.

graphic identification and the subsequent courtroom identification. He argues that the out-of-court photographic array was so impermissibly suggestive as to violate his right to due process of law. We disagree.

A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from unconstitutional procedures. *State* v. *Vass,* 191 Conn. 604, 608, 469 A.2d 767 (1983). "In determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the 'totality of the circumstances.' " *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); *State* v. *McKnight,* 191 Conn. 564, 569, 469 A.2d 397 (1983). Convictions based upon an in-court eyewitness identification following a pretrial photographic identification will be set aside " 'if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)." *State* v. *Vass,* supra, 609, quoting *State* v. *Doolittle,* 189 Conn. 183, 190, 455 A.2d 843 (1983); *State* v. *McKnight,* supra, 570.

In the present case the defendant contends that the photographic array from which the witness identified his picture was impermissibly suggestive for the following reasons: (1) only one of the photographs conformed to the description the witness gave to the police; (2) three of the photographs had names on them other than the name Pete or Peter;[4] (3) two were of individ-

---

[4] See footnote 2, supra.

uals substantially younger than fourteen or fifteen years old; and (4) two were of individuals appearing to weigh a great deal in excess of 110 pounds.

After examining the photographs, it appears that four could have been eliminated on the basis of age and weight alone; three out of the remaining four could also have been eliminated on the basis that each photograph had a name on it other than "Pete" or "Peter." Under these circumstances, we hold that the identification procedure was impermissibly suggestive. The defendant, however, cannot prevail if the identification itself was nevertheless reliable in light of the totality of the circumstances.

"[R]eliability is the linchpin in determining the admissibility of identification evidence." *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *McKnight,* supra, 572; *In re Juvenile Appeal (83-EF),* 190 Conn. 428, 435, 461 A.2d 957 (1983). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers,* 409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *State* v. *McKnight,* supra. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson* v. *Brathwaite,* supra; *State* v. *McKnight,* supra.

Under the totality of the circumstances here, the witness' identification of the defendant as the assailant was reliable. The witness had a sufficient opportunity to observe the assailant at the time of the crime. The incident occurred six feet from her and the perpetra-

tor passed within two feet of her. Her degree of attention to him was high enough to be reliable. In addition to viewing the incident, she gave immediate chase to the assailant. Her prior description, although not completely accurate as to height and weight, furnished a great deal of detail concerning his clothes, the knuckle device on his hand, the scar or mark on his face, and the chase thereafter. The level of certainty demonstrated by her was high. She stated that after careful thought she was certain that the photograph she picked was that of the assailant. The delay between the crime and the identification in the present case was only five days. The trial court was not in error in concluding that the identification should not be suppressed.

The defendant's other claim is that the trial court erred in admitting the photograph of the defendant as a juvenile as part of the photographic array which was introduced as an exhibit. He claimed that the photograph was shown to the witness prior to the defendant's arrest, in violation of General Statutes §§ 46b-124 (a)[5] and 46b-146.

During both the pretrial hearing and at the trial, the defendant objected to the admission of the photograph on the ground that it violated § 46b-124 (a) of the Gen-

---

[5] General Statutes § 46b-124 (a) in relevant part states: "All records of cases of juvenile matters as defined in section 46b-121, or any part thereof, including studies and reports by probation officers, social agencies and clinics, shall be confidential and for the use of the court in juvenile matters, and open to inspection or disclosure to any third party, including bona fide researchers commissioned by a state agency, only upon order of the superior court . . ." with certain exceptions. The exceptions enumerated in this statute are not applicable to the present case. General Statutes § 46b-121 in relevant part provides: "Juvenile matters include all proceedings concerning uncared-for, neglected or dependent children and youth and delinquent children within this state, termination of parental rights of children committed to a state agency, matters concerning families with service needs and contested termination of parental rights transferred from the probate court, but does not include matters of guardianship and adoption or matters affecting property rights of any child or youth over which the probate court has jurisdiction."

eral Statutes. The defendant did not object to its admissibility on the basis that it violated § 46b-146 of the General Statutes, the erasure of a juvenile's police and court records. Pursuant to Practice Book § 3063, this court is not bound to consider any claim unless it was distinctly raised in the trial court. There are two exceptions to that rule of practice. Judicial review is not precluded (1) where a constitutional provision has been enacted or reinterpreted between the time of trial and appeal, and (2) where the defendant claims denial of a fundamental constitution right and a fair trial. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); see also *State* v. *Miller,* 186 Conn. 654, 658–61, 443 A.2d 906 (1982). On appeal, the defendant argues that a violation of § 46b-146 deprived the defendant of his rights to due process and a fair trial. If the violation of this statute is to fall within the *State* v. *Evans* exception, a new unforeseeable constitutional right must have arisen since the trial and the record must indicate a clear deprivation of a fundamental constitutional right and a fair trial. *State* v. *Cuvelier,* 175 Conn. 100, 111, 394 A.2d 185 (1978). We conclude that that is not the situation in the present case and decline to review the claimed violation of § 46b-146. Furthermore, although the defendant, at oral argument, mentioned the violation of this statute, he failed to brief the matter. See *Stoner* v. *Stoner,* 163 Conn. 345, 349, 307 A.2d 146 (1972).

The use of the photograph of the defendant does not fall within the prohibition of §§ 46b-124 (a) and 46b-121 since there was no evidence presented at the pretrial hearing and at trial that the photograph was a part of the record of a juvenile proceeding. We cannot conclude that the trial court abused its discretion in admitting it as an exhibit.

There is no error.

In this opinion the other judges concurred.