## STATE OF CONNECTICUT *v.* JEROME EVANS

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued March 6—decided June 5, 1973

*Igor I. Sikorsky, Jr.,* special public defender, for the appellant (defendant).

*Walter H. Scanlon,* assistant state's attorney, with whom, on the brief, was *Francis M. McDonald,* state's attorney, for the appellee (state).

HOUSE, C. J.   This appeal was taken from the judgment rendered by the trial court and from its denial of the defendant's motion to set aside, as contrary to law and to the evidence, a jury verdict finding the defendant guilty of the crime of aggravated assault in violation of § 53-16 of the General Statutes.

Such a ruling by the trial court is tested by the evidence printed in the appendices to the briefs. *State* v. *Cobbs,* 164 Conn. 402, 424, 324 A.2d 234; *State* v. *Kearney,* 164 Conn. 135, 318 A.2d 100.  An examination of this evidence discloses that the jury could have found the following facts:  About 4:15 on the early morning of May 23, 1970, two police officers found the defendant sprawled on a bench outside 55 Bishop Street in Waterbury.  The defendant was awakened and said that he was all right and the police officers thereupon continued their patrol.  Before they had gone very far, the defendant yelled an obscenity at them.  The police officers turned, saw the defendant pointing at them, saw a flash at the end of his hand and heard a loud crack. The defendant then ran toward the building at 55 Bishop Street.  The police officers pursued him and one of them saw the defendant toss a gun inside

the doorway. The defendant was apprehended and at about the same time the police officers' supervising sergeant arrived at the scene in his patrol car. One of the police officers retrieved the gun. It was found to have an odor of gunpowder and to contain six shells, five live and one expended.

The statutory crime of aggravated assault[1] consists of common-law assault committed with a deadly or dangerous weapon. *State* v. *Bitting,* 162 Conn. 1, 6, 291 A.2d 240; *State* v. *Pallanck,* 146 Conn. 527, 530, 152 A.2d 633. The loaded gun recovered by the police and introduced in evidence was a .22 caliber Kohn revolver—a deadly weapon per se. *State* v. *Pallanck,* supra. The intent necessary for aggravated assault is the same as for common-law simple assault—general intent inferrable from the commission of the act itself. *State* v. *Bitting,* supra. The act of firing a gun in the direction of another, with the general intent to frighten or to wound, is sufficient to constitute aggravated assault. *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447; *State* v. *Pallanck,* supra. From the evidence submitted for their consideration, the jury could reasonably and logically have found that the defendant, with the requisite intent, did point and discharge a revolver in the direction of the police officers and that he then tossed the revolver into the doorway whence it was retrieved by the police officers and at the trial submitted in evidence. The court properly denied the motion to set aside the verdict.

The defendant assigned as error two rulings on the admissibility of evidence. One, the ruling that the gun was admissible as an exhibit, has not been

---

[1] The events occurred before the effective date of the new criminal code.

briefed and is, therefore, deemed abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246; *State* v. *Benson,* 153 Conn. 209, 217, 214 A.2d 903. His second claim is that the court erred in ruling that the defense on cross-examination could not inquire of a police officer his opinion as to whether the area of the incident had a "high crime rate." We find no merit in this assignment of error. The trial court has wide discretion in its rulings on the relevancy of evidence. *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639; *State* v. *Keating,* 151 Conn. 592, 597, 200 A.2d 724, cert. denied sub nom. *Joseph* v. *Connecticut,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557; *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473. Even if the question had been asked on the direct examination of a witness, we would see no abuse of discretion in the court's ruling. There was certainly no apparent error in the exclusion of the question in the present case where the question was asked on cross-examination and there is no indication that the subject of the inquiry was raised on the direct examination. "Cross-examination, insofar as it does not take the form of an attack on the credibility of the witness, is limited to the subject matter of the direct examination." *State* v. *Manning,* 162 Conn. 112, 116, 291 A.2d 750.

The defendant's final assignment of error asserts that the court erred in failing to find one paragraph of his draft finding. This paragraph contained a verbatim portion of the argument of the state's attorney to the jury and in addition to that portion a characterization of it in these words: "[T]he state evoked highly prejudicial and emotional appeals which were damaging and which were totally unrelated to any evidence presented during the trial. Said reference sought to involve the case in revolu-

tionary attacks on police totally absent any evidence as to motive." The court did include in its finding the full portion of the argument which the defendant sought to have included in the finding but refused to include therein the defendant's argumentative characterization of the comments. There was certainly no error in the refusal of the court to make this characterization a portion of its finding. Furthermore, not until the appeal to this court were the comments of the state's attorney objected to by counsel for the defendant. In the trial court there was no objection, no request to charge the jury about the argument and hence no ruling by the court and no exception taken. What this court said in *Cascella* v. *Jay James Camera Shop, Inc.*, 147 Conn. 337, 342–43, 160 A.2d 899, is pertinent: "The trial court is invested with a large discretion with regard to the arguments of counsel, and while its action is subject to review and control, we can interfere only in those cases where the discretion was clearly exceeded or abused to the manifest injury of some party. *James* v. *Bowen*, 83 Conn. 702, 706, 78 A. 420. The failure, here, to take exception to the remarks at the time they were made or at the close of the argument constituted a waiver of the right of the defendants to press this claim of error. *State* v. *Kirschenbaum*, 109 Conn. 394, 409, 146 A. 837; *Kurland* v. *Massachusetts Amusement Corporation*, 307 Mass. 131, 140, 29 N.E.2d 749. In the absence of such an exception by the defendants, a motion for a mistrial, or a request to charge made before the charge, we cannot say that the trial court abused its discretion. *Weller* v. *Fish Transport Co.*, 123 Conn. 49, 61, 192 A. 317; *Altieri* v. *Peattie Motors, Inc.*, 121 Conn. 316, 322, 185 A. 75; *State* v. *Laudano*, 74 Conn. 638, 646, 51 A. 860." "Unless a substantial

injustice is shown, we are not required on appeal to entertain a claim which was not made in or passed upon by the trial court. *State* v. *Rafanello,* 151 Conn. 453, 456, 199 A.2d 13; *Paley* v. *Connecticut Medical Examining Board,* 142 Conn. 522, 529, 115 A.2d 448." *State* v. *Fredericks,* 154 Conn. 68, 72, 221 A.2d 585. What this court said over one hundred years ago still remains true today. A defendant must avail himself of the opportunity to make an objection and if he "does not avail himself of the opportunity, he must be holden to a waiver of the objection. Otherwise he would be permitted to lie by and speculate upon the chances of a verdict, and that cannot be tolerated." *State* v. *Tuller,* 34 Conn. 280, 295.

There remain for consideration two other briefed contentions of the defendant which were never raised in the trial court by pleading, by motion or by objection and hence were never, so far as the record indicates, considered by the trial court. It is perhaps for this reason that they were not even mentioned in the defendant's assignments of error because the defendant could hardly claim with any reasonable justification that the trial court committed error in ruling on questions on which it never ruled and on which it was never called on to rule. We thus have a situation where in his brief on this appeal the defendant has raised for the first time two claims that his federal constitutional rights were violated in the proceedings in the trial court. We discuss these two claims in a further effort to clarify a misunderstanding which seems to prevail among some members of the bar—that § 652[2] of the

---

[2] "[Practice Book] Sec. 652. ERRORS CONSIDERED This court shall not be bound to consider any errors on an appeal unless they are specifically assigned and unless it appears on the record that the

Practice Book does not apply to claimed errors of constitutional dimensions. Contrary to the impression which seems to prevail in some quarters, it is not true that defense counsel in criminal cases may through neglect, inattention or as a trial strategy refrain from making proper objection or raising in the trial court any available constitutional defenses, confident that if the outcome of the trial proves unsatisfactory without making objections and taking exceptions and raising any available constitutional issue they may still prevail by assigning error or raising the constitutional issue for the first time on the appeal. We have repeatedly reiterated that this court will not consider claimed errors on the part of the trial court unless there has been a compliance with the provisions of § 652 of the Practice Book. See *State* v. *Hawkins,* 162 Conn. 514, 517, 294 A.2d 584; *Weyls* v. *Zoning Board of Appeals,* 161 Conn. 516, 521, 290 A.2d 350; *State* v. *Smith,* 156 Conn. 378, 386, 242 A.2d 763; *State* v. *Spellman,* 153 Conn. 65, 67-8, 212 A.2d 413.

The misapprehension of counsel appears to have arisen from our decision in *State* v. *Vars,* 154 Conn. 255, 271-72, 224 A.2d 744, in which we held that our procedural rule must yield to the authority of *O'Connor* v. *Ohio,* 385 U.S. 92, 93, 87 S. Ct. 252, 17 L. Ed. 2d 189, but, as we noted in *State* v. *Darwin,* 155 Conn. 124, 142, 230 A.2d 573, reversed on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630: "The ratio decidendi in the *O'Connor* case [385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189], as we understand it, is that a defendant cannot be required, under a state procedural rule, to raise a claim which,

question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim, or that it arose subsequent to the trial."

at the time of trial, appeared to lack semblance of merit because it was clearly contrary to settled state law, even though the state law had been overruled by an authoritative federal decision rendered after the trial but before the hearing of the appeal. Specifically, the rule of *Griffin* v. *California,* 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106, had not been laid down at the time the *O'Connor* case was tried, and the case holds that a defendant could not be required to raise such a claim at the trial since at that time Ohio's rule to the contrary was clear. The reasonableness of such a holding is apparent." As we further commented in the *Darwin* case (p. 143): "Any other rule would be utterly unworkable under circumstances such as obtained in the present case. If the procedure now attempted by . . . [the defendant] is permissible, no attorney need ever raise any constitutional claim, however well-known or long-established, since he could rest secure in the knowledge that, if the outcome of the trial proved unsatisfactory, he could raise the claim on appeal, with the added advantage that if he waited until that time the state would probably be unable to obtain a finding sufficient to permit a just review since the necessary evidence on which to predicate such a finding would not have been introduced. Except for the particular situation discussed in *O'Connor* v. *Ohio,* . . . [385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189], we do not feel that the United States Supreme Court has given any such interpretation to the mandates of the federal constitution. This seems to be the view of the Court of Appeals of this circuit as set forth in *United States* v. *Paroutian,* 319 F.2d 661, 664 (2d Cir.), cert. denied, 375 U.S. 981, 84 S. Ct. 494, 11 L. Ed. 2d 426."

Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. The same general rule has been adopted by the federal courts. The Circuit Court of Appeals for the Second Circuit has stated: "[The defendant's] . . . trial having occurred after the Supreme Court's decision in *Escobedo* v. *Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, the failure to object has deprived the trial court of the opportunity to take evidence and pass upon the objections, and precludes our entertaining these claims made for the first time on this appeal. *United States* v. *Indiviglio*, 352 F.2d 276 (2 Cir. 1965) . . . [cert. denied, 383 U.S. 907, 86 S. Ct. 887, 15 L. Ed. 2d 663]." *United States* v. *Miller*, 353 F.2d 724, 725 (2d Cir.); see also *United States* v. *Percodani*, 363 F.2d 867, 868 (2d Cir.); *Samuels* v. *United States*, 398 F.2d 964, 966–67 (5th Cir.). "While it is true that there may be exceptional circumstances which will prompt a reviewing court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court . . . below, *Hormel* v. *Helvering*, 312 U.S. 552, 556, 61 S. Ct. 719, 85 L. Ed. 1037 (1941), . . . [the defendant] has presented no 'exceptional circumstances' here which would require departure from the rule." *Frommhagen* v. *Klein*, 456 F.2d 1391, 1395 (9th Cir.). In *Cardinale* v. *Louisiana*, 394 U.S. 437, 89 S. Ct. 1162, 22 L. Ed. 2d 398, the United States Supreme Court recognized the reasons for and the validity of the rule, expressing a reluctance to review on direct appeal from state supreme courts issues which had not been raised in the state courts. That court noted not only the question of its jurisdiction but considerations of both policy and the

practical difficulty of reviewing issues on which the record is very likely to be inadequate. *Cardinale* v. *Louisiana,* supra, 439; see also *Picard* v. *Connor,* 404 U.S. 270, 92 S. Ct. 509, 30 L. Ed. 2d 438; *Hill* v. *California,* 401 U.S. 797, 807, 91 S. Ct. 1106, 28 L. Ed. 2d 484. In the same vein, another federal court recently indicated that it followed the general rule of appellate procedure, although it "might on rare occasion consider . . . [an issue not raised below] if the facts pleaded, proved, or sworn to clearly pointed to a blatant and clear deprivation of constitutional rights." *Beattie* v. *Roberts,* 436 F.2d 747, 750 (1st Cir.); see also, e.g., *Reville* v. *Reville,* 289 A.2d 695 (Me.).

There appear, then, to exist only two situations that may constitute "exceptional circumstances" such that newly raised claims can and will be considered by this court. The first is the *Vars* situation, where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. This exception is reasonable because a claim not raised is deemed waived, and a litigant should not be held to have waived an unknown right. *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189. The second "exceptional circumstance" may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial.

Applying these criteria to the case before us, we note that the defendant on this appeal raised for the first time two questions of constitutional dimensions. The first is a claim, unsupported by anything in the record, that the jury were selected in a constitutionally impermissible manner in that members of the black race were systematically excluded from

the jury which convicted him. Since the record discloses nothing whatsoever to support this claim, we have no basis for determining its merits and do not consider it.

The other claim belatedly raised by the defendant for the first time on this appeal is that the state's argument to the jury violated the rule enunciated in *Griffin* v. *California,* 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106. It is asserted that in his closing argument the state's attorney violated the stricture against commenting on the failure of the defendant to testify. This claim raises an issue of constitutional dimensions and we find that it comes within the second exception which we have mentioned in that the record is sufficiently complete for us to consider it on its merits and it involves a fundamental constitutional right.

The record discloses that the defendant did not testify at the trial and that in the course of his rebuttal argument to the jury the state's attorney stated: "I would ask, ladies and gentlemen, have you heard one shred of evidence in this court room that refutes the claim that the defendant pointed and fired this gun at these two police officers who were going about their duty?"

In its closing argument the state may properly call to the attention of the jury any portion of the evidence that stands uncontradicted. Such a comment becomes objectionable only when it focuses the attention of the jury on the failure of the defendant to testify and thus violates the holding of the United States Supreme Court in *Griffin* v. *California,* supra, that "the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment,

forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." A test for evaluating a prosecutor's argument which has been adopted by several courts and approved by the Court of Appeals of this circuit in *United States ex rel. Leak* v. *Follette,* 418 F.2d 1266, 1269 (2d Cir.), cert. denied, sub nom. *Leak* v. *Follette,* 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665, seems adequate and proper: "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" As that court noted in the same case: "It has been held that remarks concerning lack of contradiction are forbidden only in the exceedingly rare case where the defendant alone could possibly contradict the government's testimony." See also *United States* v. *Lipton,* 467 F.2d 1161, 1168–69 (2d Cir.); *Ruiz* v. *United States,* 365 F.2d 103, 105 (10th Cir.).

The record in the case before us as supplemented by the evidence contained in the appendices to the briefs and verified by reference to the cited portions of the transcript clearly indicates that the comments of the state's attorney would not naturally and necessarily have been taken by the jury as a comment on the failure of the accused to testify. The defendant's closing argument had referred specifically to the testimony of one of the witnesses offered by the defendant and the state's comments occurring in the immediately following rebuttal were properly addressed to the state of the whole evidence rather than to the failure of the defendant to testify. We conclude that on the record before us it does not appear that the defendant was denied a

fundamentally fair trial by the comment in the state's closing argument to which a belated objection was first taken in the course of this appeal.

There is no error.

In this opinion the other judges concurred.