## STATE OF CONNECTICUT *v.* THOMAS MANKUS
### (6288)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 9—decision released September 13, 1988

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*James M. Ralls,* deputy assistant state's attorney, with whom, on the brief, was *Herbert Carlson,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the third degree in violation of General Statutes (Rev. to 1977) § 53a-103.[1] The defendant's sole claim of error

---

[1] General Statutes (Rev. to 1977) § 53a-103 provides: "(a) A person is guilty of burglary in the third degree when he *enters or remains* unlawfully in a building with intent to commit a crime therein." (Emphasis added.)

is that the trial court committed reversible error when it instructed the jury that it could convict the defendant of burglary on the basis of his remaining unlawfully in a building where the state specifically charged the defendant with having committed the unlawful entry form of burglary. We find no reversible error.

The state's evidence was as follows. On February 11, 1979, Edward Rolocut was visiting Scott Mankus, the defendant's son, at the defendant's home in Manchester. That evening, the defendant took Rolocut to the Rolocut home in West Hartford. Along the way, the defendant asked Rolocut if he could stay with Rolocut's family in exchange for liquor and money. The defendant then dropped Rolocut off near his home, and waited while Edward joined his mother, Pauline Rolocut, his sister, Theresa Rolocut, and his sister's friend, Pamela Lewis. Although Edward told his mother of the defendant's offer, he never returned to the car. Sometime thereafter, the defendant made several calls to the Rolocut home and in one of those calls he threatened to injure Edward if he came out of the house.

At approximately 12:30 a.m. on February 12, 1979, the defendant and his son broke through the locked back door of the Rolocut home. Scott Mankus and Edward Rolocut then began fighting in the living room. Lewis testified on cross-examination that, at some point during the fight, she heard Pauline and Theresa Rolocut both tell the Mankuses to "get out of here." When the defendant approached Edward Rolocut with a pair of vice grip pliers, Pauline Rolocut hit him with a ceramic statue. The defendant then struck her in the face with the pliers, causing permanent injury to her right eye.

The defendant and his son fled the scene. They were arrested on their way home. The police found the pliers in the defendant's pocket during a search incident to the arrest.

The defendant was charged with one count of assault in the first degree in violation of General Statutes (Rev. to 1977) § 53a-59 (a) (1), and one count of burglary in the first degree in violation of General Statutes (Rev. to 1977) § 53a-101 (a) (2). He was acquitted on the first count and, on the second count, he was found guilty of the lesser included offense of burglary in the third degree. After the defendant's appellate rights were restored pursuant to a petition for habeas corpus, this appeal followed.

In its information, the state charged the defendant with burglary in the first degree, alleging that he "did *enter* a building [unlawfully] with intent to commit a crime therein and intentionally, knowingly or recklessly inflicted or attempted to inflict bodily injury to another person." (Emphasis added.) In its instruction to the jury, however, the court permitted the jury to find the defendant guilty of burglary if he "entered *or remained* unlawfully" in the building with the intent to commit a crime therein. (Emphasis added.) The defendant claims that the court's instruction unconstitutionally enlarged the burglary offense as stated in the charging document and thereby permitted the jury to convict him on the basis of an uncharged portion of the statute in violation of his rights under the sixth amendment to the United States constitution and under article first, § 8, of the Connecticut constitution. Under the circumstances of this case, we disagree.

The defendant failed to raise this claim at trial and failed to take an exception to the trial court's charge. We review this claim under the doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), however, to the extent that the defendant's claim of enlargement is adequately supported by the record, because this claim implicates "the fundamental constitutional right to be informed of the nature and cause of the accusation against him . . . and because we

have recently granted an *Evans* review for a similar claim in *State* v. *Newton,* [8 Conn. App. 528, 532, 513 A.2d 1261 (1986)]; see also *State* v. *Roque,* 190 Conn. 143, 149–50, 460 A.2d 26 (1983)." *State* v. *Trujillo,* 12 Conn. App. 320, 325–26, 531 A.2d 142, cert. denied, 205 Conn. 812, 532 A.2d 588 (1987).

It is well established that "[w]here, as here, the trial court's charge . . . included both the 'enters unlawfully' and the 'remains unlawfully' statutory language, each of which may be an element of the crime of burglary; and where the information restricted the offense to 'entering unlawfully' and no amendment was requested . . . the trial court erred in instructing the jury on the 'remains unlawfully' disjunctive element of burglary." (Citations omitted.) *State* v. *Belton,* 190 Conn. 496, 502, 461 A.2d 973 (1983). "To prevail, however, the defendant must demonstrate that the court's instruction resulted in unfair surprise or somehow prejudiced the preparation of his defense. *State* v. *Franko,* [199 Conn. 481, 490, 508 A.2d 22 (1986)]." *State* v. *Peterson,* 13 Conn. App. 76, 84, 534 A.2d 1237 (1987). The defendant does not claim that the instruction caused him unfair surprise. He claims, however, that it prejudiced him because the defense he set forth was insufficient to meet a charge that he committed the burglary by remaining unlawfully in the Rolocut home with intent to commit a crime therein.

"In determining whether a defendant has been prejudiced in the preparation of his defense, we consider the nature of his defense advanced at trial in relation to the trial court's instruction. . . . Where the record indicates that a defendant would not have changed his defense in any way had he actually been charged by the state with the particular theory of criminal liability upon which the trial court instructed the jury, the defendant's defense cannot be said to have been prejudiced . . . . Thus, if the defendant's defense encom-

passes the uncharged theory of criminal liability as well as the charged theory, and, if believed by the jury, could lead to an acquittal under either theory, his constitutional rights have not been adversely implicated by the trial court's instruction." (Citations omitted.) *State* v. *Trujillo,* supra, 326–27.

The defendant put forward the following defense, through his own testimony and the testimony of Scott Mankus. Edward Rolocut stole money out of the defendant's wallet while driving back to West Hartford with him. When confronted with this act, Edward Rolocut stabbed the defendant with a sharp instrument and left the car. After returning home, the defendant and his son called Edward Rolocut, asking that the money be returned. They then drove to the Rolocut apartment for the sole purpose of requesting the money back. Scott Mankus knocked on the back door and then entered through the unlocked door, with the defendant following. Scott Mankus had previously entered in this manner, and he felt he had implied permission to do so. The Mankuses testified, however, that the defendant had never entered the house before, and the defendant admitted that he entered the apartment without express or implied permission. Scott Mankus did not instigate the fight with Edward Rolocut, and the defendant never threatened Rolocut but was hit with an object. Edward Rolocut, wielding the pliers, accidentially hit his mother in the eye. While crouched over after being hit, the defendant was nearly hit by a falling pair of pliers. Before leaving, the defendant placed the pliers in his pocket so that they would not be used against him.

The defendant claims on appeal that his defense at trial was two-pronged: (1) that he did not enter unlawfully because his son was permitted to enter the Rolocut home, and, on February 12, he entered the home with his son "as his guest"; and (2) that he had no intent

to commit a crime in the Rolocut home, either when he entered the residence because he merely intended to request the return of his money, or while he remained there because he was at all times a bystander, neither assaulting nor threatening anyone.

We will not review, under *State* v. *Evans,* supra, the defendant's claim that he was prejudiced because his trial defense of a right to enter the Rolocut household as a guest of his son was insufficient to meet the enlarged offense. This portion of his claim is not "adequately support[ed] by the record." Id., 70. The defendant has failed to supply this court with a transcript of his closing argument to the jury. Such a transcript would have provided us with the most cogent statement of his theory of the case as presented to the jury. In addition, from the evidence[2] and from the court's instructions to the jury,[3] we find no support for the

[2] In his direct testimony, the defendant never claimed that he believed that he was entitled or permitted to enter the Rolocut home. On cross-examination, he admitted that he had not been invited into the Rolocut home by anyone inside the apartment and no one inside the apartment had given him the impression that they wanted him to enter the home.

[3] The trial court instructed the jury that "even if the accused had entered a building and if he had that right and had been given that permission, and that right had been terminated or the permission revoked by someone who had the right to terminate it, you may still find unlawful remaining as a basis of the burglary." The court then applied this rule to the evidence and claims of counsel as follows: "Now, as I recall the evidence, Mrs. Pauline Rolocut testified that she did not invite Thomas and Scott into her home or give them permission to come in. As I recall the evidence, Edward testified he did not give Thomas and Scott permission to come to the apartment. As I recall the testimony, Scott Mankus testified that although he never got permission to go to the Rolocut apartment, he had been there a number of times without objection, and from that he assumed he had permission. As I recall, Thomas Mankus testified he received no invitation to go over to the apartment." The defendant's failure to take an exception to this portion of the charge, which effectively charged a lawful entry defense out of the case, sends a powerful signal that counsel did not view this instruction as harmful; see *State* v. *Coleman,* 14 Conn. App. 657, 684, 544 A.2d 194 (1988); and, therefore, that the defendant's theory of defense was not based upon a claim of lawful entry.

argument, now pressed on appeal, that it was the defendant's theory that he entered lawfully as a guest of his son.

The defendant's theory of defense presented at trial, namely, that he never intended to commit a crime in the Rolocut home, was not prejudiced by the erroneous instruction. By claiming that he did not have the requisite intent to commit a crime at *any* time during the incident, the defendant put forth a defense which, if believed by the jury, would have led to an acquittal regardless of whether the jury found him to have entered unlawfully or to have entered lawfully but remained unlawfully after having been told to leave. Under these circumstances, where the defendant's defense encompassed both the charged and uncharged theories of liability, "and, if believed by the jury, could lead to an acquittal under either theory, his constitutional rights have not been adversely implicated by the trial court's instruction." *State* v. *Trujillo,* supra, 327.

The defendant also claims that had he known of the enlarged offense, he would have added to the defense by also directly disputing the "unlawfully remaining" element of the enlarged offense. The defendant argues that he would have asked different questions of Lewis on cross-examination to avoid eliciting her testimony, and to controvert her testimony, which tended to show that he remained unlawfully in the Rolocut apartment. The defendant asserts, then, that the court's instruction prejudiced his defense because he would have attempted to impeach Lewis by asking questions that he does not specify, and because he would have more directly denied that witness' assertions through his own testimony and that of his son.

We need not decide, however, whether this argument is simply too speculative to provide a sufficient basis for a conclusion that the defendant's defense was prej-

udiced by the erroneous jury instruction. Under the circumstances of this case, we conclude that the jury did not convict the defendant of the unlawfully remaining form of burglary. Consequently, the instructional error was harmless because we are "satisfied beyond a reasonable doubt that it did not contribute to the verdict." *State* v. *Coleman,* 14 Conn. App. 657, 682, 544 A.2d 194 (1988).

The defendant was acquitted by the jury of the charge of assault in the first degree, and of the lesser included offenses of assault in the second degree and assault in the third degree. Because the jury acquitted the defendant of the only crimes encompassed by the state's theory of the case occurring while he remained unlawfully in the Rolocut residence, we conclude without a reasonable doubt that the jury did not convict the defendant of committing a burglary by remaining unlawfully in the Rolocut home with intent to commit a crime therein, despite the court's erroneous instruction permitting the jury to do so. Implicit within this acquittal is an acceptance by the jury of the defendant's testimony that he did not intend to commit any crime while he remained in the building.

For this reason, the defendant's reliance upon *State* v. *Belton,* supra, 503–504, is misplaced. In *Belton,* the defendant was charged with and convicted of sexual assault and burglary, both in the first degree. In its information, the state charged the defendant with the "entry" form of burglary. The trial court, however, instructed the jury that it could find the defendant guilty under an "unlawfully remaining" theory of burglary. The defendant had presented evidence that his entry into the building and his sexual relations with the victim therein, were at all times consensual. Our Supreme Court stated that it could not conclude "from the verdict itself" that the erroneous charge did not

affect the verdict. Id., 503. The court concluded: "That the erroneous charge was prejudicial to the defendant is readily apparent from his own testimony. He stated that he entered the building lawfully and remained lawfully, while the complainant testified in a manner consistent with unlawful entry. . . . Since the defendant was also convicted of sexual assault in the first degree, a finding of guilt not challenged in this appeal . . . implicit within this conviction is a rejection by the jury of the defendant's testimony that he remained lawfully within the complainant's apartment. The defendant's own testimony of his lawful entry, coupled with the erroneous instruction, effectively allowed the jury to conclude that *irrespective* of the mode of entry the defendant was guilty of burglary." (Emphasis in original.) Id., 503–504.

In this case, by contrast to *Belton,* we conclude from the verdicts that the erroneous charge manifestly did not affect the ultimate verdict. *State* v. *Ruiz,* 171 Conn. 264, 273, 368 A.2d 222 (1976). Here, the verdict makes clear that the jury could only have concluded that the defendant committed burglary by entering a building unlawfully with the intent to commit a crime therein, as charged in the information. Accordingly, the defendant was not prejudiced by the enlargement of the offense in the court's instruction to the jury.

There is no error.

In this opinion the other judges concurred.