## STATE OF CONNECTICUT *v.* MARVIN L. SMITH
## (13322)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued October 6—decision released December 20, 1988

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Jay F. Huntington,* deputy assistant state's attorney, with whom, on the brief, was *Peter Markle,* former assistant state's attorney, for the appellee (state).

COVELLO, J. The defendant, Marvin Smith, has appealed from a judgment of conviction of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) following a jury trial. The defendant claims that: (1) the trial court erred in allowing a police officer, as an expert witness, to give opinion testimony concerning the defendant's intent to sell narcotics; and (2) the state's attorney's repeated expressions of opinion during summation denied him his due process rights under the United States and Connecticut constitutions to a fair trial. We find no error.

The jury could reasonably have found that on June 26, 1986, at 1:30 a.m., the defendant was the operator of a Lincoln Continental automobile that was stopped by Waterbury police officers investigating a complaint of a disturbance involving guns. The officers found a blue cap under the car, kicked there by the accused, containing three or four blue glassine bags of cocaine, eight to ten vials with red caps containing "crack," a form of cocaine, ten white glassine bags containing heroin, a one hundred dollar bill and some twenty dollar bills. A search of the automobile produced five or six more glassine bags containing cocaine, four more vials of "crack," four plastic bags of marihuana, a number of elastic bands and more cash.[1] The defendant claims that the money and illegal substances all belonged to a person known only as Mark who had fled from the defendant's vehicle before the police approached.

At trial, the state asked one of the investigating officers, experienced in drug investigations, whether, in his opinion, the defendant possessed the narcotics with

---

[1] A total of $585 was recovered from the hat and the car.

the intent to sell them.[2] The officer responded, "Yes, that was my opinion." The defendant admittedly made no objection to the question.

## I

The defendant claims that the trial court erred in allowing a police officer to testify to the defendant's intent with respect to the narcotics. Despite defense counsel's failure to object at trial, the defendant asks us to review his claim: (1) as an exception under the holding in *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); (2) as plain error pursuant to Practice Book § 4185; or (3) in accordance with our holding in *State* v. *Vilalastra,* 207 Conn. 35, 540 A.2d 42 (1988). We decline to do so.

"Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* supra, 69.[3] "There appears . . . to exist only two situations that may constitute 'exceptional circumstances' such that newly raised claims can and will be considered by this court. The first is . . . where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. . . . The second 'exceptional circumstance' *may* arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right *and* a fair trial." (Emphasis added.) Id., 70. It is this second "exceptional circumstance" upon which the defendant relies.

---

[2] The testimony was as follows:

"Q. So, it was your opinion, Detective [Jose] Velazquez, based on the quantity, the variety and the amount that this was possessed for sale?

"A. Yes, that was my opinion."

[3] Despite the narrow appellate window which this review offers, there is statistical evidence that corroborates its expanding use for reviewing unpreserved error. See J. Ranucci, "*State* v. *Evans:* The Unexceptional Exception," 61 Conn. B.J. 359 (1987). This being the case the question arises, unresolved here, as to whether the ruling in *Evans* continues to serve the limited purpose for which it was intended.

In *State* v. *Vilalastra,* supra, we addressed the issue of whether an expert witness may, under nearly identical circumstances, furnish an opinion that a defendant possessed illegal drugs with the intent to sell them. We concluded that he could not. We held, however, that such a ruling was a matter of state evidentiary law and that no constitutional issue was involved. Id., 46, 47. Here, as in *Vilalastra,* we see no constitutional implication in the admission of this opinion testimony. "Generally, 'the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved.' *State* v. *Periere,* [186 Conn. 599, 611, 442 A.2d 1345 (1982)], quoting *United States ex rel. Bibbs* v. *Twomey,* 506 F.2d 1220, 1222 (7th Cir. 1974)." *State* v. *Talton,* 197 Conn. 280, 289–90, 497 A.2d 35 (1985). Since the defendant has not "clearly been deprived of a fundamental constitutional right"; *State* v. *Evans,* supra, 70; the second "exceptional circumstance" test is not present and *Evans* review is therefore unwarranted.

As an alternative basis for our consideration of this unpreserved claim, the defendant asks that we consider it as a matter of plain error pursuant to Practice Book § 4185.[4] The defendant argues that General Statutes § 54-86i[5] prohibits opinion testimony in illegal drug possession cases on the issue of a defendant's intent to sell.

[4] Practice Book § 4185 states in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

[5] General Statutes § 54-86i provides: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

He claims that the court acted contrary to this statutory provision in permitting the expert's response and therefore committed plain error. This is by no means the language of the statute. While the state directs us to significant legislative history that suggests that this statute is intended solely for the purpose of limiting psychiatric testimony, we need not decide this issue here. Suffice it to say that such an error, if any, does not rise to the level required for plain error review. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). This is clearly not the case here.

The defendant next asks that we consider this issue under our holding in *State* v. *Vilalastra,* supra. Specifically, the defendant points to that portion of the decision that states: "The defendant did not object to this rephrased question. The lack of an objection does not preclude our review of this claim, however, because the Appellate Court determined that [the expert witness'] reply, which is quoted in the text of this opinion, implicated constitutional error." Id., 38 n.2.

This statement by no means creates a new area or standard for unpreserved review. It was precisely for this reason that we granted certification in *State* v. *Vilalastra,* supra, i.e., the Appellate Court's erroneous holding that there were constitutional implications to the evidentiary ruling. As there noted, we held that there are no constitutional implications to such an evidentiary holding. Id.

II

Finally, the defendant claims that he was deprived of his due process rights under both the United States and Connecticut constitutions and denied a fair trial

because of the state's attorney repeated expressions of opinion during opening argument and summation concerning the defense offered by the defendant and the credibility of his witnesses.[6] No objection, exception, request for a curative instruction nor motion for a mistrial was made concerning the allegedly improper comments. We hold that the actions of the state's attorney did not impinge upon the defendant's constitutional rights and did not deny him a fair trial and therefore we decline full appellate review.

"The defendant relies on a line of cases where we have reviewed claims of prosecutorial misconduct under *State* v. *Evans,* supra. In those cases where we have engaged in *Evans* review, the record has disclosed a pattern of repeated, strident and serious misconduct. 'In the cases in which we have denied *Evans* review, the claimed misconduct consisted of isolated and brief episodes, and did not reveal a pattern of conduct repeated throughout the trial. Moreover, the misconduct was not blatantly egregious.' *State* v. *Williams,* [204 Conn. 523, 537, 529 A.2d 653 (1987)]; see *State* v. *Chace,* 199 Conn. 102, 107–108, 505 A.2d 712 (1986); *State* v. *Tyler-Barcomb,* 197 Conn. 666, 672–74, 500

---

[6] The following is a sampling of the challenged remarks characterized by the defendant as the state's attorney's personal opinion: "And, I submit to you, I don't believe that, on the basis of the evidence in this courtroom, there is any such person Mark. I believe it was conveniently made up, he was conveniently made to appear and then to disappear"; "As I said, I don't think the evidence even supports a finding that there was any fourth person in this car. I don't think Andre Clark or Orlene Hobbs are worthy of your belief"; "Andre Clark went on to—and he even admitted some things that I believe are damaging to the defense. He admitted that Mark got out of the back seat, if ever there was a Mark"; "[The defendant] tried to escape. And, he was caught without ever losing sight. So, they had to make up an imaginary fourth person to take the blame for this crime . . ."; "The making of a prior inconsistent statement affects her credibility. I don't see how you can divorce that from your mind, how you can just find that not to be important in assessing her credibility, somebody who just walks into court and all of a sudden makes up a person named Mark with no last name and no address and no other information . . . ."

A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986); *State* v. *Lubesky,* 195 Conn. 475, 483–84, 488 A.2d 1239 (1985)." *State* v. *Rodgers,* 207 Conn. 646, 653–54, 542 A.2d 1136 (1988).

Examination of the record in this case fails to disclose the kind of remarks that rise to the level of "character assassination and vitriolic personal attacks that we have held to constitute a denial of the constitutional due process right [and] a fair trial." Id., 654. We conclude, therefore, "that the remarks of the prosecutor as set forth in the record do not constitute the 'exceptional circumstance' contemplated in *State* v. *Evans* to warrant review of these unpreserved claims. For similar reasons, we conclude that these remarks do not warrant review as plain error." Id.

There is no error.

In this opinion the other justices concurred.